HENRY SHAFER *vs.* GERARD STONEBRAKER.—*June,* 1832.

It is a grave question, whether by the Act of 1763, *ch.* 23, the legislature did not intend to interdict, altogether, the use of special demurrers; but the practice of sustaining them by every judicial tribunal in the State has engrafted upon that act, an interpretation, which nothing but another act of Assembly can change.

When matter of record is pleaded, the omission to insert, *prout patet per recordum,* is a fatal defect, if assigned as cause of special demurrer; and there is no difference in this respect, between records of the same, and those of any other court.

Where matters of fact as well as of record are averred in a plea, the conclusion should be by a general verification, and not with a verification by the record.

A defendant may plead in bar at the same time, a judgment in a prior action by way of estoppel, and the general issue. These are not inconsistent nor incompatible pleas.

G on the 3d November, 1829, brought an action upon the case against S, for an injury to his mill, by backing water upon it from a mill-dam below. He claimed damages from the 10th September, 1827, to the time of the impetration of his writ. S pleaded in bar a verdict and judgment in his favor, in a prior action brought by G against him, on the 9th November, 1827, for an injury of precisely the same character, committed upon the 1st June, 1822. Among other allegations, the plaintiff averred in both suits, that the defendant had raised and increased the height of his mill-dam or tightened it, whereby the water course was obstructed, &c., and the plea in this action, after setting forth the proceedings in the first cause, prayed judgment if the plaintiff ought to be admitted against the first verdict and judgment, to say that the defendant had so raised his dam, &c. The first action was tried upon the plea of not guilty. Upon demurrer to this plea, it was held, that no matter of fact or of right appearing under the circumstances to have been distinctly put in issue in the first suit, the finding

of the jury and judgment of the court,·formed no estoppel to a recovery in the subsequent action.

The rule by which the sufficiency of a plea of a prior judgment by way of estoppel is to be tested, is, does it plainly appear that the fact or right relied on as a bar, was distinctly put in issue, and found by the jury, in a former suit between the same parties.

The plea of not guilty in an action upon the case, puts in issue not only every material fact contained in the declaration, but every defence admissible in evidence under such a plea, of which the defendant should offer testimony.

Under such a plea the defendant may give in evidence a release—satisfaction—an award—a license to do the act complained of—any justification or excuse, or whatever in equity and conscience, according to the existing circumstances, precludes the plaintiff from recovering.

It is a general rule, that the verdict and judgment upon the merits in a former suit, is, in a subsequent action, between the same parties, where the cause of action, damages, or demand are identically the same, conclusive against the plaintiff's right to recover, whether pleaded in bar, or given in evidence under the general issue, where such evidence is legally admissible; and that such prior verdict and judgment need not be pleaded by way of estoppel.

APPEAL from *Washington* County Court.

This was an *Action on the case,* instituted by the appellee, against the appellant, 3d November, 1829. The declaration averred, that whereas the said *Gerard,* on the ·10th September, 1827, and long before, was, and from thence hitherto hath been, and still is, lawfully seized and possessed of a certain close, on which is erected a mill for the sawing of timber, and carding of wool, with the appurtenances situate, &c. and in which said mill and close, he the said *Gerard,* during all the time aforesaid, used, &c. the trade, and employment of sawing timber, and carding wool, to wit, at, &c. and whereas a certain water course from time immemorial until the time of committing the grievances hereinafter next mentioned, did run and flow, and was accustomed to run and flow, and at the time of committing the grievances hereinafter next mentioned, and from thence hitherto, of right ought to have run and flowed, from and below the said mill and close of the said *Gerard,* in its ancient channel, and at the natural and ancient height of

the stream. And whereas until the committing of the grievances hereinafter mentioned, the said mill was unimpeded in its operations by backwater, or any manner of artificial flooding of said stream below the said mill, to the great benefit and advantage of the said *Gerard.* Yet the said *Henry* well knowing the premises, but contriving, &c. wholly to deprive the said *Gerard* of the use, &c. of the said mill, and close, and to hurt, &c. the said *Gerard,* in his possession of said mill, and his seizin of the said close, with the appurtenances; whilst the said *Gerard* was so possessed and seized, to wit, on the said 10th September, 1827, wrongfully increased the height of a certain dam of him the said *Henry,* situate below the mill of the said *Gerard* on the same stream, to wit: in the county aforesaid, and with stone and earth, &c., raised and close stopped the said dam, and unjustly kept and continued the said dam, so raised, &c. for a long time, to wit, from thence hitherto, and thereby during all that time, wrongfully and unjustly raised, obstructed, and stopped the said water from running in its accustomed channel, from, and below the said mill of the said *Gerard,* and thereby wrongfully and injuriously raised the water in the said water course, at the mill of the said *Gerard,* and upon the sheeting, and under the wheel of the same, above the ancient and accustomed height of the stream, and flooded the wheel of the said mill with backwater, to wit, on, &c. at, &c. By means whereof the operation of the said mill was impeded and stopped, and the said *Gerard* lost, and was deprived of the use, &c. of his said mill and close, and the same during all that time hath been of no use, &c. to the said *Gerard,* on account of the backwater under the wheel, occasioned by the premises aforesaid, to wit, at the county aforesaid.

The *second count* charged,---and whereas also the said *Gerard,* on, &c. at, &c. and long before was, and from thence hitherto hath been, and still is, lawfully possessed of a certain mill used for the sawing of timber, with the appurtenances, situate, &c. in which said mill, he the said

*Gerard*, during all the time aforesaid, used, &c. the trade, &c. of sawing timber, and carding wool, to wit, at the county aforesaid; and whereas a certain water course from time immemorial, until the time of the committing the grievances hereinafter mentioned, did run and flow, and was accustomed to run and flow, and at the time of committing of the grievances hereinafter next mentioned, ought of right to have run and flowed, from the upper side of a certain close of the said *Gerard*, unto, and from the said mill of the said *Gerard*, uninterruptedly, for the supplying of the said mill with water, and for the driving and working of the said mill; and whereas the said *Henry* had erected a dam across the said stream, below the mill of the said *Gerard*, situate, &c. and until the committing of the grievances hereinafter next mentioned, the said *Henry* had left certain openings in his said dam, through which the water of the said stream flowed freely, and was accustomed from time immemorial to pass freely; by means of which openings the water above the said dam, in the said stream was kept at its usual and ancient height and state, yet the said *Henry* well knowing, &c. but contriving, &c. to hurt and injure, &c. the said *Gerard*, in the possession of his said mill with the appurtenances, to wit: on, &c. at, &c. wrongfully and unjustly shut up, stopped and closed the said openings, in the said dam of him the said *Henry*, by means whereof, the said stream became swollen, and dam backed upon the sheeting of the said *Gerard*, and the water of the said stream through the close, and from, and below the mill of the said *Gerard* became impeded, and dammed above its ancient height and accustomed level; by means whereof, the said *Gerard* could not have the force of the said water for working his said mill, as before the grievance complained of, and the said mill has by reason of the premises been all the time aforesaid, of no use, &c. to the said *Gerard;* and the said *Gerard* has, during all that time lost the benefit, &c. of the same, and is greatly damnified in his possession thereof, and in his trade and business, to wit, at, &c. wherefore the said *Gerard* hath sustained damages, &c.

The defendant pleaded,

1st. "That he, the said *Gerard*, ought not to be permitted to say or allege, that he, the said defendant, increased the height of his said dam, or close stopped and tightened his said dam, whereby he obstructed the water of the said stream, and caused it to rise above its ancient, and accustomed height, and to flow back upon the said wheel, and sheeting of the said plaintiff, at the mill of the said plaintiff, to the damage of the said plaintiff, because he saith, that heretofore, to wit, on the said 9th November, 1827, he the said plaintiff sued out of *Washington* County Court, here, a certain writ of trespass, on the case against him the said defendant, and afterwards at November term of the said court, on the third Monday of November, 1828, he the said plaintiff declared against him the said defendant, here in the said court, that whereas the said plaintiff, on the 1st May, 1822;" (here follows the declaration in the first action, in which the injury to the plaintiff alleged to have been done, 1st June, 1822, is substantially the same as in this,) and the verdict and judgment on the plea of *not guilty* is alleged to have been for the defendant, which said judgment is still in force, and remains of record in this court, &c. the plea then proceeds. "And the said defendant in fact saith, that the plaintiff and defendant named in the record of the said former suit, are the same parties, as in this suit, and that the said mill of the said plaintiff, and the said water course in the declaration in the said former suit mentioned, are the same mill of the said plaintiff, and the same water course mentioned in the said declaration of the said plaintiff in this suit, and that the dam of the said defendant, and the raising and increasing the height thereof, and the tightening thereof, whereby the water of the said water course was obstructed, and caused to rise above its ancient and accustomed height, and to flow back upon the wheel of the said plaintiff, mentioned in the said declaration of the said plaintiff in the said former suit; and the dam of the said defendant, and the raising and increasing

the height thereof, and the tightening thereof, whereby the water of the said water course is obstructed, and is caused to rise above the ancient and accustomed height of the said stream, and to flow back, and to flood the wheel of the said mill of the said plaintiff with backwater, now complained of, and mentioned by the said plaintiff in his said declaration in this suit, are the same, and not other and different, and this the said defendant is ready to verify. Wherefore he prays judgment, if the said plaintiff ought to be admitted against the said verdict and judgment, to say or allege, that he the said *Henry* has raised and increased the height of his said dam, or tightened the same, whereby the water of the said water-course has been obstructed, and caused to rise above the ancient and accustomed height of the said stream, and to flow back, and flood the wheel of the said plaintiff, at his said mill, with back water, to the damage of him the said plaintiff.

2d. Plea *not guilty.*

*Issue* was taken to the second plea, and a special demurrer filed to the first, for which the following causes were assigned.

1. That there is no *prout patet per recordum* set forth, or contained in the said plea.

2. That said plea does not set forth, that the said defendant is ready to verify the same, by the record of the former action mentioned in the said first plea.

3. That the said first plea is uncertain and insufficient in this, it does not set forth, that the jury in the said first action gave a verdict therein.

4. That the said first plea is uncertain and insufficient in this, that it does not set forth, that the judgment of the court in the said first action was given or rendered upon any verdict, or any finding of the jury therein.

5. That the said first plea is uncertain and repugnant in this, that after alleging that the said defendant had rightfully raised and increased the height of his said dam, it prays the judgment of the court, if the said plaintiff ought to be ad-

mitted to say, that the said defendant had so raised or increased the height of his said dam.

6. Because, in and by the two aforesaid pleas of the defendant, there is an *estoppel* pleaded with a *traverse*, which require different modes of trial by different tribunals.

The County Court sustained the demurrer to the first plea; and the verdict and judgment on the second, being for the plaintiff, the defendant prosecuted the present appeal.

The cause was argued before EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Yost*, and *Anderson*, for the appellant, contended,

1. It was not necessary to allege, *prout patet per recordum*, *Skinners' Rep.* 520. Statute, 4 *Ann*, ch. 16, sec. 2, and more especially is this the case when a record of the same court is pleaded. All that can be required in such a case is, to aver that it remains in full force, because it is there subject to the inspection of the court. 6 *Com. Dig.* 132. *Title Pl. (E.)* 129.

Where the plea is of fact, and of record also, a verification by the record is not necessary or proper. *Clerk vs. Hoskins*, 3 *Mod. Rep.* 79. 2 *Saund. P. and Ev.* 315. 1 *Chitty Pl.* 393. *Lytle vs. Lee and Ruggles*, 5 *Johns. Rep.* 114. *Thomas vs. Ramsey*, 6 *Ib.* 26. *Karthaus vs. Owings*, 2 *Gill and Johns.* 443.

In this case there is a mixture of fact and record; the fact being the indentity of the parties, &c. upon which issues might have been raised for the jury. They insisted further, that special demurrers are prohibited in this State, by the act of 1763, ch. 23. *Kilty's Rep.* 245. *Perkins vs. Perkins*, 1 *Harr. and McHen.* 406.

On the 3d and 4th causes of demurrer they referred to 2 *Chitty Pl.* 483. *Outram vs. Morewood*, 3 *East.* 349, 350. 1 *Saund. Rep.* 75, 92, 93, (*note* 2.)

On the 5th, to *Stephen on Pl.* 379, and contended also that the objection is unfounded in fact.

On the 6th cause of demurrer they cited 1 *Chitty Pl.* 394, 395.

2. The plea is good in substance.   *Outram vs. More-wood*, 3 *East.* 345.   *Strutt vs. Bovingdon*, 5 *Esp. Rep.* 58. 1 *Stark Ev.* 198, 199, (*note.*)   3 *Wil. Rep.* 308.   *Shelton vs. Barbour*, 2 *Wash. Rep.* 64, 65.   *Preston vs. Harvey*, *Hen. and Mun.* 63–4.   *Vooght vs. Winch*, 2 *Barn. and Ald.* 662.   It is not to be regarded as an odious plea, even if *pleaded* as an estoppel, its tendency being to prevent litigation, nor is the greatest degree of certainty required in framing it.   1 *Chitty Pl.* 175.   *Dovaston vs. Payne*, 2 *H. Black.* 530.   *King vs. Horn*, 2 *Cowp. Rep.* 682.

*Price* and *Dixon*, for the appellee.

1. The plea is bad upon general demurrer—a verdict in a former action cannot be final, and conclusive, unless the pleadings in such former action, reduced the controversy to a single point.   1 *Stark Ev.* 200.   The issue in the former action was upon the plea of *not guilty;* and there are various defences applicable to such a state of the pleadings, which may have defeated the plaintiff.   1. The jury may have found, that the defendant did not do the act complained of.   2. That he had a right to do it.   3. The plaintiff may have failed in proving an injury, &c.; and it is impossible therefore, to say upon what precise ground the verdict in that case was founded. *Standish vs. Parker*, 2 *Pick. Rep.* 20. 1 *Serg. and Low.* 243.   *Parker vs. Standish*, 3 *Pick.* 288.   7 *Pick.* 147.   The point was not before the court in the case of *Barn. and Ald.* referred to on the other side, and what is there said, consequently, is *obiter.*   But the want of certainty renders this plea defective, even upon general demurrer.   *Dovaston and Payne*, 2 *H. Black.* 527.   5 *Bac. Abr.* 428.   1 *Chitty Pl.* 176.   *Archb. Pl.* 223–4–5, 238.

2. The plea is defective in form, and bad on special demurrer.   The want of the *prout patet per recordum*, and *hoc paratus*, &c. is fatal to it, and it is no answer to say, that these requisites are dispensed with, by the mixture of

record and fact contained in it. This, so far from curing the defect, is itself an objection, as it makes the same plea, present matter to be tried by different tribunals, the court and jury. *Archb. Pl.* 143, 144, 163, 251, 253. 1 *Chitty Pl.* 393, 512, 513. *Stephen on Pl.* 434. 5 *Bac. Abr.* 444, 445.

In support of the 6th cause of demurrer, that an *estoppel* was pleaded with a traverse, they cited, 5 *Bac. Abr.* 428. *Le Conte vs. Pendleton,* 1 *John's cases,* 104. *Archb. Pl.* 253.

They insisted that the long and uninterrupted use of special demurrers, since the act of 1763, had given it a construction, which it was too late now to shake. They had been ever since the passage of that act, received in all the courts without question or hesitation. 2 *Harr. Ent.* 297, 591. *The State vs. Green,* 4 *Harr. and Johns.* 543. 7 *Ib.* 373, 376. *Chandler vs. The State,* 5 *Ib.* 284.

DORSEY, J., delivered the opinion of the court.

The appellants have insisted, that the judgment of the County Court should be reversed, because, since the act of Assembly of 1763, *ch.* 23, all special demurrers, say they, are prohibited in *Maryland.*

If this act of Assembly were now, for the first time, to receive a judicial exposition, it might be a very grave question, whether it were not the intention of the legislature, and whether that intention is not sufficiently expressed, to interdict, altogether, the use of special demurrers. But we do not consider that question as being now open for examination. The practice of sustaining special demurrers, by every judicial tribunal in the State, hath engrafted upon this act of 1763, an interpretation which nothing but an act of Assembly can change.

Are the objections raised to the plea, by way of special demurrer, well founded, is the next inquiry to be considered ? That when a matter of record is pleaded, the omission to insert *prout patet per recordum,* is a fatal defect in

the plea, if assigned as cause of special demurrer, is a principle so universally recognized, that it cannot be necessary to offer authorities to prove it.

There is nothing in the present case which dispenses with the necessity of its introduction. Nor is there any thing in the books to warrant the distinction attempted to be drawn in this respect, between records of the same court, and those of any other court. The *prout patet per recordum* is equally necessary in both cases.

The second cause of demurrer we do not think sustainable. The plea contains averments of material matters of fact, as well as of record, on which an issue might have been taken. Of these facts, the record would have been no verification; and such a conclusion would, therefore, have been erroneous. Where matters of fact, as well as of record, are averred in a plea, the conclusion should be by a general verification, and not with a verification by the record. *Karthaus vs. Owings,* 2 *Gill and Johns.* 430. 2 *Chitty's Plead.* 454, 493. 1 *Chitty's Plead.* 572. *Archb. C. P.* 227, 249. *Pitt vs. Knight,* 1 *Saund.* 91. 2 *Saund. P. and Ev.* 755. *Thomas vs. Ramsey,* 6 *Johns.* 26. *Little vs. Lee and Ruggles,* 5 *Johns.* 112. We deem the validity of the plea unaffected by the third, fourth, and fifth causes of the demurrer, nor do we think it less unexceptionable, for the reason assigned in the sixth cause, to wit, "that by the two aforesaid pleas of the defendant, there is an estoppel pleaded with a traverse, which require different modes of trial, by different tribunals." If an issue were joined on the record, and also on the plea of not guilty, both issues would be tried in the same forum, though before different branches of it, but both under the same controlling power. What is there objectionable in this? Is it not every day's practice to have issues of law and fact, for trial at the same time, in the same cause? The former are first disposed of by the court, and then the latter are tried by the jury. Can any inconvenience result from such a course of practice? But it has been alleged that these are

inconsistent, incompatible pleas. In what does that incon-
sistency or incompatibility consist? It has not been pointed
out in the argument, nor can we discover it. Both pleas
may well stand together; there is no contradiction between
them. If the plea of estoppel be sustained, a *fortiori*, is
the plea of not guilty sustainable. If the issue on the for-
mer terminate in favor of the plaintiff, that on the latter may
still be found for the defendant? The same pleadings were
used in *Outram vs. Morewood and wife*, 3 *East.* 345, and
in many other cases, which if were necessary, might be re-
ferred to.

The questions of form being disposed of, how stands the
plea as to matter of substance? Is it good on general de-
murrer, is the next subject for our consideration? This being
a plea by way of estoppel, the rule by which its sufficiency
is to be tested, is a certain and familiar one. Does it plain-
ly appear that the fact or right relied on as a bar, was dis-
tinctly put in issue, and found by the jury in a former suit
between the same parties. The matter here alleged to have
been decided by the jury in the former trial, is that the
raising and stopping of the mill-dam of the appellant, and
thereby blocking the water upon, and impeding the water
wheel of the appellee, was lawful, and gave no right of ac-
tion to the appellee. Was that the question distinctly sub-
mitted to the jury, and established by their finding? If it
were, the record presents the most vague and inconclusive
evidence of that fact. The plea in the first trial was what?
*not guilty ;* which put in issue, not only every material fact
contained in the declaration, but every defence admissible
in evidence under such a plea, of which the defendant
should offer testimony. And under the general issue in
this form of action, the defendant may give evidence of a re-
lease, satisfaction, award, license to raise and stop the dam,
and back the water, until the time of issuing the writ in the
first action, or any justification or excuse, "or whatever will
in equity and conscience, according to the existing circum-
stances, preclude the plaintiff from recovering." 1 *Chit.*

*Pl.* 386. What is it then, that the jury have found in the former suit? Was it, that the appellee was not seized and possessed of the mill, as charged in the declaration? That the appellant did not raise and stop his dam? That such raising and stopping did not back the water, and obstruct or impede the water wheel of the appellee? That the appellee had released the cause of action, or received full satisfaction for the injury committed? That he had licensed the acts of the appellant until the time of the suit? or that the appellant had a right to do, and continue, the acts complained of? Upon the jury's being satisfied of the truth of any one of these grounds, they were bound to have found a verdict for the appellant.

All these questions were open for their consideration, under the pleadings in the cause, and on which of them their verdict was founded, the record furnishes us no guide to discover. No matter of fact or of right, therefore, having been distinctly put in issue on the former trial, the finding of the jury and judgment of the court, form no estoppel to a recovery in the subsequent action.

The case of *Vooght vs. Winch.* 2 *B. & A.* 662, has been referred to as a decisive authority, that the verdict and judgment relied on in the plea before us, are a conclusive bar. And if the *dictum* of the judges in that case, were sound law, it would be difficult to evade the force of their decision.

But that *dictum* is at war with every principle of special pleading, and with all previous adjudications on the subject. It was a point not discussed in that cause, and none of the anterior decisions on the subject were referred to. The question there was, whether a verdict in a former suit, when offered in evidence under the general issue, in a subsequent action, was as conclusive a bar, as if it had been pleaded by way of estoppel. And the judges in their opinions upon that point, which alone was before them, after establishing the distinction between the conclusiveness of a verdict, when specially pleaded, and when offered in evidence on the general issue, without considering the circumstances

and character of the particular verdict in question, rather to illustrate the principle of their decision, than any thing else, proceed to say, " it would have been conclusive if pleaded in bar to the action by way of estoppel. "

This decision in *Vooght vs. Winch*, (if indeed a decision it can be called,) is wholly irreconcilable with the case of *Outram vs. Morewood and wife*, 3 *East* 345, the great land mark of the profession in exploring questions of this kind. And also to *Miles vs. Rose, and another*, 5 *Taunt.* 705, reported in 1 *Serg. and Low.* 240; and the much stronger case of *Sir Federick Evelyn vs. Haynes*, cited by Lord *Ellenborough* in *Outram vs. Moorewood and wife*; and to *Standish, petitioner, vs. Parker, et al.* 2 *Pick. Rep.* 20. In the two latter cases, this principle of technicality is certainly stretched to its utmost length, and impairs in a very great degree, the utility of the general rule, as to the conclusiveness of former verdicts. The facts which constitute the plaintiffs' right of action, are charged in their declarations, and are put in issue by the general plea of not guilty. Before the jury in either of those cases could find a verdict for the plaintiff, thus determining the question of right in his favor, they must of necessity have decided that every averment in the declaration, material to the establishment of the plaintiff's right, was true. Can it then be said that the right of the plaintiff, that the facts which constitute such right, have not been distinctly put in issue, and found by the jury? To say so, would be to add a new condition to the rule—that the right must not only be distinctly put in issue, but that a separate issue must be framed upon every fact, essential to the constitution of that right. The reason assigned by *Lord Mansfield* for his decision in *Evelyn vs. Haynes* was, "because no issue was taken in the first action upon any precise point." But can it be material, where several facts are to be tried, all of which are necessary to constitute the right of the plaintiff, whether the whole of those facts are submitted to the determination of the jury on one issue, or a separate issue be joined upon

each individual fact? If the verdict upon the one issue must be against the right, unless they find the truth of every fact submitted to them as its basis, is not their verdict thus given in favor of the right, as distinct a determination of its existence, as if rendered on issues, on each particular fact by which it is constituted? Thus to restrict this wise, and necessary axiom of legal policy, would be almost to destroy its utility. A better reason for *Lord Mansfield's* opinion might perhaps be found in the suggestion, that although the finding of the jury, did assert the right to exist in the plaintiff at the time of its violation, for which indemnity is recovered in the first suit; yet that it does not irresistibly follow, that its existence continued, during the time of the injury complained of in the second. But an averment to that effect in the plea, it is conceived, would obviate that objection.

If the technicalities incident to pleadings by way of estoppel, and the diversity of effect, as regards conclusiveness, when a verdict and judgment in a former suit are relied on as a bar, by way of plea, or as evidence, be applied to cases, where the second suit is not only predicated upon the same right, but upon the same identical cause of action, being for the recovery of the same damages, that necessary and wholesome principle of the common law, *"nemo debet bis vexari, pro eadem causa,"* so highly approved of by the most distinguished jurists of ancient and modern times, becomes in its operation for all purposes of practical utility, almost a dead letter. It is no longer true, in one out of one hundred actions on the case, or in *assumpsit*, that a verdict and judgment in a court of law, is a bar by way of estoppel to a subsequent suit, between the same parties for the same demand. In those forms of action it is matter of rare, rather than of usual occurrence, that any matter of fact or of right is so distinctly put in issue by the pleadings, as to be pleadable by way of estoppel in a subsequent suit, according to the strong and comprehensive expressions met with in the commentaries upon the law of

pleadings and evidence ; in the works of *Chitty*, *Archbold*, *Saunders* and *Starkie*, no discrimination is made, whether used in pleading or as evidence, between the conclusiveness of verdicts and judgments, when relied on as a protection in a second suit, where the same identical damages are sought to be recovered, and where different damages are claimed for a posterior violation of the same right. In *England* the authorities are so numerous and uniform, that to cases of the latter character, the applicability of the doctrine of estoppel, must be admitted : but that it ever has there been applied to the former class of cases, we have been able to find no express adjudication. The oppression and injustice that would result from such its application, is too obvious to be portrayed. The court of common pleas we think have in some degree sanctioned this distinction, in *Stafford, and other assignees of Clark, the younger, vs. Clark the elder,* 2 *Bing.* 377. There an action of *assumpsit* having been brought to recover the same damages, which were recovered in a former action of *trover*, (the general issue having been pleaded in both cases,) the verdict and judgment having been suffered to go to the jury, on the trial of the latter, in overruling a motion for a new trial on the ground of the inadmissibility of such evidence, the court say, they do not mean "to enter into the question of the conclusiveness of such a document, when it is produced in evidence ; *Lord Mansfield* thought it conclusive, but my *lord Chief Justice Abbot*, seems to consider it otherwise." For this forbearance of the court to express their opinion, it is difficult to assign a reason, unless they deemed the principle of pleading by way of estoppel, as wholly inapplicable to the case before them ; no doubt remaining at that day, but that if the defence was a fit subject for a plea of estoppel to make it a conclusive bar, it must be so pleaded ; as it loses its attribute of conclusiveness when offered in evidence under the general issue.

This discrimination too, is most strongly fortified by adverting to the forms of pleas of former recovery, and former

acquittal, or verdict and judgment for the defendant, on the same cause of action.   They do not conclude by way of estoppel, but generally in bar to the action; whereas a plea in estoppel must in its conclusion rely on the bar by way of estoppel, or the estoppel is regarded as waived.   For forms of the several pleas above mentioned, see 2 *Chitty Pl.* 247, 438, 592.   2 *Evans' Harr.* 49, 50, 148, and the cases there referred to in the note.

The same view of this subject was manifestly adopted by *Chief Justice Parker* in *Standish, petitioner, vs. Parker et al.*, where on a motion for a new trial, in which the plaintiff obtained damages for being obstructed in the enjoyment of a right of way, the court refuse the motion, on the ground, "that nothing is conclusively determined by the verdict, but *the damages for the interruption covered by the declaration*, and that in another action, if one should be brought, the petitioner (the defendant,) will have a right to contest the respondents (the plaintiffs,) right to the easement, for the interruption of which this action was brought."

We conceive therefore, it may be stated as a general rule, that a verdict and judgment, upon the merits in a former suit, is, in a subsequent action between the same parties, where the cause of action, damages, or demand is identically the same, conclusive against the plaintiff's right to recover, whether pleaded in bar, or given in evidence under the general issue, where such evidence is legally admissible; and that such prior verdict and judgment, need not be pleaded by way of estoppel.

JUDGMENT AFFIRMED.